We'll proceed to our third case on the docket, number 12-1705, Oko v. Holder. I hope I pronounced that correctly, Mr. Suleiman. Yes, Your Honor. Good morning, Your Honor. Batai Suleiman on behalf of the petitioner, Ms. Mobolaji Aoko. Your Honor, this case is an immigration case wherein the petitioner, in this case Ms. Aoko, applied for employment-based adjustment of status before the immigration judge, and she was found to be inadmissible based on a prior application that she filed back in 1991. Our contention on behalf of the petitioner, Your Honor, is that Ms. Aoko was not subject to the grant of inadmissibility under Section 2126 of the Immigration and Nationality Act because she did not make the alleged application willfully when the application was submitted on our behalf. And in any event, if she did make the application willfully, she timely retracted the willful misrepresentation. And finally, Your Honor, the immigration judge and the Board of Immigration Appeals denied Ms. Aoko's application for a waiver of inadmissibility, holding that Ms. Aoko failed to meet a boarding of proof to establish extreme hardship to Ms. Aoko's U.S. permanent resident mother, who was 66 years old at the time of the hearing. Your Honor, the first argument here is that Ms. Aoko did not willfully submit a TPS application to subject Ms. Aoko to inadmissibility. Briefly stated, Your Honor, Ms. Aoko is a citizen of Nigeria. She came into the U.S. November of 1990. Before a year was out, in October of 1991, Ms. Aoko was encountered by an unscrupulous immigration practitioner who posed as a lawyer to Ms. Aoko and told Ms. Aoko that she would be able to get a green card by submitting an application. The application was submitted on behalf of Ms. Aoko. And back in 1993, the first testimony that we have from Ms. Aoko was that she did not read the application before she signed it. That was the hearing before the judge in New York in June of 1993. Now, however, in 2006, when we had a second hearing before a different judge in Baltimore, Ms. Aoko, at the same hearing, initially when she was asked if she read the application before she signed it, she testified that she did not read the application before she signed it. However, on further cross-examination, she did say that, I read the application before I signed it. Now, Your Honor, all we have in the entire record with regard to Ms. Aoko's knowledge of the misrepresentation in the application entirely rests on Ms. Aoko's testimony. The first testimony that was given by Ms. Aoko in 1993 and the testimony that was given in May of 2006, where she has these two contradictory testimonies regarding her knowledge of the misrepresentation in the application before she signed it. Now, Your Honor, at the hearing in May of 2006, the judge in Baltimore actually concluded at that hearing that there was no evidence that Ms. Aoko had knowledge of the misrepresentation. And she granted Ms. Aoko's application for permanent residency. DHS filed an appeal, and on appeal, the Board of Immigration Appeals sent the case back to the judge to make additional findings as to Ms. Aoko's knowledge as to the representations contained in the application. When the case went back to the judge, the judge did not hold any further evidentiary hearing, and she came to the conclusion that Ms. Aoko had knowledge of the misrepresentation before she signed the application. She disregarded the judge, disregarded the testimony that was given by Ms. Aoko in 1993, and considered only the testimony that was given by Ms. Aoko in 2006. And our submission, Your Honor, was this. Back in 1993, when Ms. Aoko testified initially that she did not read the application before she signed it, at that time, her memory was still fresh. She was still able to recollect more clearly what happened at that time. But by the time it was in 2006, she couldn't remember clearly at that point in time anymore. As a matter of fact, the judge in Baltimore in 2006 herself made the observation that at the hearing in 2006, Ms. Aoko appeared not to even understand what was going on. She didn't understand what applications were being filed on her behalf. Now, we do understand that Ms. Aoko, as the applicant for adjustment of status, she has the burden to prove that there is no ground of inadmissibility for her to get permanent residency. But the standard of proof is the preponderance of the evidence. And looking at the record, Your Honor, there is simply no conclusive evidence that Ms. Aoko had knowledge of the misrepresentation in the application. Is that really the standard conclusive evidence? Your Honor, it is not the standard. But in the context of deciding if an alien is inadmissible, the board itself has cautioned that the factual background to reach that conclusion should be highly scrutinized to be sure that the ground for inadmissibility exists. Though it's not conclusive, but the evidence that is required to show that an alien is inadmissible should be substantial and should be clear on the record. Ms. Aoko has been in this country since 1990, and this issue of inadmissibility is sufficient to make her unable to gain any lawful residence in this country. So the factual basis should be highly scrutinized to be sure that the facts indeed exist to conclude that she is inadmissible. But there were two versions that the appellant gave. One that said that she had not read it before she signed it, and then one that clearly said that she had read it before she signed it. And the I.J. made a credibility determination there and chose one version over the other. How do we get beyond the deference that is to be accorded that credibility standard by this court? Yes, Your Honor, and that's part of our argument, Your Honor, that the record is not clear. Because the I.J. herself, in 2006, she made the initial conclusion that there is no sufficient showing that Ms. Aoko had knowledge of the misrepresentation. That was a judge's initial decision back in May of 2006. That is in the record. Now, when the case got to the BIA and they sent the case back to her on remand, without taking any additional evidence, she came back to the different opposite conclusion that Ms. Aoko had knowledge of the misrepresentation when she signed the application. So we have two different findings by the same judge based on the same hearing that took place before her in May of 2006. And what we're saying, Your Honor, is that the petitioner's testimony back in 1993 is clear. It's more reliable because the petitioner's memory should be better at that time, because it was simply about two years from the time when the application was submitted on her behalf. That judge found it was not credible testimony. That is correct, Your Honor. But with regard to her asylum application, Your Honor, because when she was put in proceedings back in 1993, I'm sorry, in 1991, she applied for asylum and the judge found her not to be credible on her account. And on that basis, Your Honor, the judge in 1993 denied the asylum and denied the voluntary departure that she was not credible. That is correct, Your Honor. But by 2006, when she was – when she was – at the time before the judge in Baltimore, the judge actually believed her. And the judge in Baltimore in 2006 said she will credit her testimony that she gave in 1993. Our second argument, Your Honor, is that even if indeed Ms. Eko had knowledge of the misrepresentation, we suggest to the court that she timely retracted her misrepresentation, because when she got to the place of the interview, where she was supposed to be interviewed, she admitted when she was confronted that we knew what was going on. Because at that time, the immigration themselves became aware that a lot of people were taking advantage of innocent people to try to get them to get the green card. When Ms. Eko got to the venue of the interview and she was confronted, she admitted that she's not from Liberia, she's from Nigeria, and that the application was filed on her behalf by somebody else. And that was when she was put in proceedings. Now, the IG and the BIA stated that there is no evidence that there was a timely retraction of that misrepresentation by Ms. Eko. But what we have pointed out was that it was still sufficient. She timely recanted the misrepresentation as long as there was no decision that was rendered on that application before she withdrew the application. Has any circuit adopted that test? No, Your Honor, but I did cite the Foreign Affairs Manual, which indeed indicates that it is still possible for an applicant to recant the misrepresentation before the application is decided upon by the immigration. So in terms of being timely, because the application is safe, and we referenced this in our brief that there was no indication whatsoever that the immigration at that time acted on the TPS application, because there is no evidence on the application that there was any action taken on that application. Do you cite any case in which a court of appeals reversed or granted a petition for review in disagreement with the board's determination as to recantation? No, Your Honor. I'm sure your research has been quite exhaustive. I have not come across any. So if we were to grant relief on this basis, we would be the first circuit court in the country ever to do such a thing. And I would suggest, Your Honor, that would be a good thing, because the Foreign Affairs Manual did indeed recognize the principle of recantation, even at the time of the interview. I believe the board seems to think that as long as the recantation took place at the interview, that there could not be a recantation. But the principle stated in the Foreign Affairs Manual did indicate that even at the interview, there is still an opportunity for recantation by the applicant. The mitigation benefit is much greater if you do it before the interview. Would you agree with that? Absolutely, Your Honor. So would you also agree that it could be a reasonable policy decision to have it take effect only if it happens before the interview versus during the interview or at the end of the interview? Yes, absolutely, Your Honor. It is, of course, better if the recantation is before the interview. But according to the Foreign Affairs Manual, Your Honor, the issue whether or not there is a recantation sufficient to withdraw the misrepresentation is dependent on the circumstances of the case. Now, in the case of the respondent, she was not aware of what was in the application until the day before the interview. When she got there, she noticed that the application is representing her to be from Liberia. So she only had a period of one day. She got a call from the individual who prepared the application for her that you've been scheduled for an interview. Go there tomorrow. And when she goes there, it doesn't mean she begins to understand the basis for the application. So in terms of the retraction or the recantation being timely, she did not actually have the opportunity to recant or to retract it until the day she appeared at the interview. Okay. You've reserved some time for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. And may it please the Court, my name is Rob Stalzer, and I'm here on behalf of the Attorney General. Your Honors, I want to direct your attention to something that Petitioner writes in her brief. And I think it disposes of most of the issues in this case. He writes on page 10 that the evidence is not conclusive one way or the other. And, Your Honors, I think that concession basically resolves the issue. Because the evidence is not conclusive, because it is equivocal in the words of the Board, Petitioner did not meet her burden to demonstrate eligibility for relief. And it was her burden. And because she did not meet it, there was no error here. As far as recantation goes, I want to point out it wasn't one day that Petitioner had. The application was submitted in October of 1991. Her testimony varies on this, but eventually she said she read the application. She knew, said Liberia, she signed it anyways. It was then submitted. The interview was in December, so there was a period of months there where, knowing that there was a problem, she could have corrected it. But she did appear at the interview with a crib sheet that had facts about Liberia, which she would be expected to know as she was claiming citizenship in Liberia, even though she was Nigerian. And so in terms of whether the recantation was timely, we would look at all of those facts. And what the immigration judge and the Board said here wasn't that it was certainly untimely. What they said was, again, we don't have the evidence necessary to make a determination. And, again, that was her burden. And, again, she failed it because, quite frankly, based on her own testimony, what happened in 1993 is exceptionally murky. And she needed to come forward with evidence that she, if recantation is even possible in this context, which is an open question, that she did recant in a timely and a voluntary fashion. Her testimony on that, too, again, she said that her interviewing officer admonished her, tell me the truth. And then she said, well, I'm from Nigeria, not Liberia. Again, was that voluntary? It doesn't appear that it was. And certainly it doesn't matter for recantation, again, if it's available in this context, that it occurred before there was a final decision. Recantation is provided traditionally for testimonial statements, not statements signed on penalty of perjury in an application. Testimonial from face-to-face, where a little white lie slips out. An applicant is nervous, something comes out, it's wrong, and then they immediately realize, okay, this is a problem, and they fix it. And the recantation principle says, we won't hold that against you, because we recognize that people have failings that might slip out in the heat of the moment in a nerve-wracking interview. But in this case, of course, we're not talking about testimonial nature statements. We're talking about an application for relief that said, I sign under penalty of perjury that I'm a citizen of Liberia. Because, for example, that was a material fact here. TPS wasn't available for aliens from Nigeria. She had to be from Liberia to get the relief she was seeking. So it was certainly key and material. Which is why, as I say, it was her burden to demonstrate her admissibility, and that she failed that burden. If Your Honors have no questions, we'll rest it over here. Thank you, Your Honors. Yes, briefly stated, Your Honor, we understand that the burden is on the petitioner to show that the grant of inadmissibility is not applicable in this case. But respectfully, Your Honors, the immigration judge in Baltimore actually did find, the first time in May of 2006, that the petitioner did not willfully make the misrepresentation. That made our burden. It was on remand from the board to the judge that she came to this contrary decision that the petitioner had the knowledge of the misrepresentation. So we have here the decision by the immigration judge on two different occasions, based on the same testimony, that are contradictory to each other. Apart from the testimonies of the petitioner herself. That will be all, Your Honor. I don't know if I should address the court on the issue of whether or not the court has the jurisdiction to determine the, because when the judge and the BIA denied the application, ultimately they came to the conclusion that she failed to demonstrate extreme hardship to a mother who was 66 years old at the time of the hearing. And our contention is that that was a legal conclusion, and that that issue is subject to review by this court as a legal question. Because the board's conclusion is that, as a matter of law, that Ms. Eoko failed to meet our burden of proof to establish extreme hardship to her mother. And we're saying that they did not take into consideration all the factors that we advanced in our brief to show the extreme hardship that the petitioner's mother would suffer if the petitioner is removed from this country. She is 66 years old. She's entirely dependent on Ms. Eoko for financial support. She lives with Ms. Eoko, with Ms. Eoko's two children, who are U.S. citizens. And if Ms. Eoko is removed from this country, the woman will basically be homeless because she is not working, she's not going to be able to pay the mortgage, or to maintain herself, or to take care of the grandchildren. And the board and immigration judge came to the conclusion that the entire case of the petitioner is economic in nature. And we submit that, yes, even though the board has heard in some cases that the economic detriment alone is not sufficient to show extreme hardship, but in this case, it is. Even if it is only economic detriment alone, the petitioner's mother cannot survive by herself here. And the board, in their reasoning, stated that Ms. Eoko's mother could look for employment. This is a 66-year-old woman who has never worked. Ever since she became a permanent resident, she was entirely dependent on Ms. Eoko. And the board's suggestion is for her to go look for employment to support herself if Ms. Eoko is removed from this country. That goes to show the extreme nature of the hardship that the petitioner's mother will suffer if she is removed from this country. In addition to that, your Honor, we did point out the medical issues that is involved in the case. And the IG and the board's conclusion is that the petitioner's mother's health condition is under control, but they didn't take into consideration the fact that it is under control because Ms. Eoko is providing, is helping her to pay for her medical treatment. And if Ms. Eoko is removed from this country, she's not going to be able to do that anymore, and that will become an additional issue. In addition, and finally, your Honor, the crucial issue here is Ms. Eoko's mother is a permanent resident. She cannot relocate to Nigeria apart from the other issues that we argued in the brief. If Ms. Eoko's mother, as a permanent resident, relocates back to Nigeria, that essentially means she will lose her green card status because there is a limit to how much time she can stay outside of the country. Thank you, your Honor. Thank you very much, counsel. We appreciate your presentation.
judges: Andre M. Davis, Stephanie D. Thacker, Mark S. Davis